**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DESTANTI DUSKEY and PETER KUHLMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIDIUM APP,<br><br>Defendant. | **Case No.** 26-cv-1351<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Destani Duskey and Peter Kuhlman, on behalf of themselves and all others similarly situated, complain and allege upon information and belief based, among other things, on the investigation made by Plaintiffs and through their attorneys, as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Navidium App ("Navidium"), arising from its unfair and deceptive addition of junk fees to consumers' online shopping carts.

2. When consumers browse products on e-commerce websites, the e-commerce websites will advertise the price of their retail items, along with an advertisement for either free or flat-rate shipping. Those pricing representations are false, however, because Navidium encourages e-commerce retailers to surreptitiously add junk fees to consumer purchases, including Navidium's so-called "package protection" or "shipping protection" fees.

3. As discussed in detail herein, the assessment of these fees is deceptive and unfair, since: (a) Navidium sneaks these fees into consumers' shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering retailer promises for "free" or flat-rate shipping deceptive or confusing; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiffs, who would not knowingly choose to pay them absent Navidium's deception.

4. Thousands of e-commerce customers like Plaintiffs have been assessed hidden shipping charges for which they did not bargain due to Navidium's deceptive and unfair tactics.

5. By unfairly obscuring consumers' true shipping costs, Navidium deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, most major e-commerce sites do *not* assess such fees.

6. Plaintiffs seek damages and, among other remedies, public injunctive relief that will adequately inform consumers concerning the difference between mandatory and optional shipping costs and fees.

## PARTIES

7. Plaintiff Destani Duskey is a resident and a citizen of Chicago, Illinois.

8. Plaintiff Peter Kuhlman is a resident and a citizen of Grand Haven, Michigan.

9. Defendant Navidium App is an unregistered, unincorporated business entity operating in the United States with its purported headquarters in Brooklyn, New York. Navidium is an online application available for purchase by merchants for use in their e-commerce marketplaces across the United States. Plaintiffs have searched state registries, national public records databases, and corporate databases but have thus far been unable to find any public records, incorporation records, or other identifying and/or contact records for Navidium. However, Navidium's Terms and conditions, available at https://navidiumapp.com/terms-conditions, provide the following address: 600 E 8th St. Brooklyn, New York 11218 as its mailing address and other websites include Brooklyn, New York as Navidium's "headquarters," including its LinkedIn profile (https://www.linkedin.com/company/navidiumapp/about/).

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member, including both named Plaintiffs, of the proposed Class resides outside New York; and (3) the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Navidium is subject to personal jurisdiction here and regularly conducts business in this District, purports to have its headquarters in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. The Rise of Navidium

12. Navidium offers various services to e-commerce retailers related to shipping, including its purported "package protection" and "shipping protection."

13. Navidium ingratiates itself with e-commerce retailers by promising it can help them make more money from the shipping rates they charge consumers. For example, Navidium promises to help retailers "increase revenue" with "shipping protection:"




14. But the way in which Navidium helps e-commerce retailers "increase revenue" is through deception. As described herein, Navidium directs e-commerce retailers who use its services to install a widget on its website. Upon information and belief, Navidium's widget adds a

hidden, *pre-selected* box or toggle that automatically adds junk fees to all orders that it then shares with the retailers.






15. On information and belief, Navidium designs the interface presented by e-commerce retailers to consumers regarding the add-on fee (including the name of the fee, the time at which the fee is first mentioned during the checkout process, the time at which the fee amount is added to the purchase price, and the pre-selection of the box or toggle for the fee) so that the fee goes undetected by consumers.

16. On information and belief, Navidium also uses sales tactics that pressure e-commerce retailers into allowing Navidium to design the interface to provide consumers with pre-selected boxes or toggles at checkout that automatically add order protection and other fees by default.

17. The Wall Street Journal has highlighted this problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process***.

Imani Moise, *Porch Pirates are Now Raising the Price You Pay at Checkout*, Wall Street Journal, Dec. 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

18. Upon information and belief, Navidium is aware that, by programming its widget to automatically opt in consumers to its "shipping protection" or "package protection" fees, most consumers will unknowingly purchase the protection. Upon information and belief, Navidium is further aware that, if its widget were programmed to offer *optional* order protection (requiring an opt-in), the vast majority of consumers would not purchase its product.

19. Worse, Navidium's widget automatically opts consumers into additional shipping-related junk fees even when the e-commerce website at issue expressly and prominently promises that shipping is either completely "free" or has a flat price.

20. Navidium receives a significant portion of all fees it is able to foist upon consumers, thereby incentivizing Navidium to minimize the number of persons who opt out of its fees.

21. Because Navidium's practice is deceptive and unfair, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies doing business online, recently informed e-commerce retailers that automatically adding optional charges at checkout will be banned starting February 2025. *Id*.

22. This ban is too little, too late to help Plaintiffs and hundreds of thousands of consumers already deceived and exploited by Navidium.

**II. <u>Navidium Surreptitiously Adds Fees to Consumers' Carts</u>**

23. Here is how Navidium's deception works. When a consumer views an item online through an e-commerce retailer, the consumer is informed that the item will either be delivered for free or for a flat rate.

24. Once the consumer begins the checkout process of the e-commerce retailer's website, a small fee for "package protection" or "shipping protection" is added to the cart, without the consumer having done anything at all to have added the item to the cart.

25. While the e-commerce retailer's checkout page displays the box or toggle adding the fee, the box or toggle is tiny and purposely designed to go unnoticed by consumers. So, consumers who wish to check out under the assumption that they are receiving free or flat-rate shipping simply proceed through the checkout process without knowing that they are not, in fact, receiving free or flat-rate shipping. Consumers are left entirely unaware that the added "package protection" or "shipping protection" charge is optional and must be removed by *unchecking* the tiny box or toggle adding the fee.

23. Thus, if consumers even *notice* a fee added to their transactions, they are still left

entirely unaware that the added "package protection" or "shipping protection" fee is optional, because it appears in the cart as mandatory.

24. This pre-selection and automatic opting in of consumers to junk fees is itself unfair and deceptive.

25. While many consumers do not notice that an additional fee is being added to their order, others believe that they have no choice but to pay this fee. Some consumers notice the previously undisclosed fee but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into Navidium's system. Thus, at that point, it does not make sense to start over and research whether there may be some other way to avoid the fee. There is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, that is if the consumer can even figure out how to avoid the fee at all in light of Navidium's deceptive widget. This deceptive checkout practice has done its job and diverted millions of dollars in junk fees to Navidium and e-commerce retailers.

26. As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022 (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

27. The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."**

https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added). Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

## III. <u>Add-On Fees That Contradict Promises of Free or Flat-Rate Shipping Deceive or Confuse Consumers About the True Nature of The Transaction</u>

28. Navidium's actions are deceptive because by presenting consumers with "protection" fees that are contradicted by representations on e-commerce retailers' websites that promise "free" or flat-rate shipping, Navidium deceives consumers about the true nature of the transaction they are entering into.

29. Specifically, based on its use of words like "shipping" and "package," as well as the fact that it is presented to consumers at checkout, it can be reasonably inferred that what Navidium collects is a shipping fee.

30. But, as described herein, e-commerce websites that use Navidium's widget promise "free" shipping on certain orders and a flat-rate price for shipping on other orders. These are clear promises that the total marginal cost of having products shipped—*i.e.* transported from the retailer to the consumer—are governed by the "free" or flat-rate shipping price representation.

31. Navidium was aware, or should have been aware, that consumers were and would be deceived or confused about the true nature of the transaction by presenting consumers on the Navidium application an add-on shipping fee at the same time that a promise of "free" or flat-rate shipping was being made.

## IV. <u>Navidium's "Package Protection" and "Shipping Protection" Fees Are Inaccurately Named and Described and Provide No Added Value to Consumers</u>

32. In addition to the manner in which Navidium's fees are added and the fact that the

added fees render other “free” or flat-rate shipping promises deceptive or confusing, as described below, Navidium’s fees provide illusory protections that have little or no value to consumers. In fact, on information and belief, a significant portion of the fee does not even go toward package protection but instead goes directly into Navidium’s and e-commerce retailers’ pockets.

23. First, the fees provide little or no *additional* “protection” for shipments than already exists. Indeed, most online retailers provide replacements and/or allow for returns of damaged products. Therefore, the order protection fee provides no extra protection. Navidium misrepresents and omits material facts about that truth.

24. Second, popular shipping services like UPS, Federal Express, and USPS Priority Mail *automatically* include order protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Navidium misrepresents and omits material facts about that truth too. Thus, for the vast majority of consumers—those who are paying to ship a product costing less than $100—“shipping protection” or “package protection” is entirely worthless, because they are already provided the same protection by the shippers.

25. Third, in the event goods are not delivered, stolen, or damaged, consumers can report the issue to their credit card company or bank, who will often reverse the charge. Thus, credit cards are a popular option for consumers making online purchases for this reason.

26. Finally, even in the exceedingly rare case when a consumer chooses to make a claim—such claims are exceedingly rare because of the numerous other self-help methods described above and also because most consumers do not even know they purchased “protection”—Navidium works to make it difficult or impossible for consumers to actually recover anything from those claims by creating numerous obstacles for obtaining any type of relief.

27. For all these reasons, Navidium’s order protection fee is deceptively named and

described. Indeed, no reasonable consumer would ever knowingly elect to pay for the "shipping protection" or "order protection" fee if it knew that it provides essentially zero additional value or protection.

## V. Navidium's Fees are Junk Fees and Violate Federal and State Guidance

28. Navidium's fees, such as its order protection fee, are precisely the type of "Junk Fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

29. As the Federal Trade Commission said recently regarding its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

30. In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA"), amending it to make "drip pricing" illegal. Drip pricing is advertising a price that is less than the actual price that a consumer will have to pay for a good or service. *See* Cal. Civ. Code § 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a

product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Sept. 16, 2025). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

31. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

32. Navidium's conduct also violates the federal Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, Navidium used "negative option" sales "[that] took advantage of consumers' expectations." *Id*., § 8401(8). Moreover, Navidium violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before

charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

33. Navidium violates federal guidance by adding the shipping fees as line items after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

## VI. Plaintiff Duskey's Experience

34. Plaintiff Duskey purchased clothing from e-commerce retailer Marcella NYC on March 17, 2025.

35. Plaintiff Duskey's purchase included a $6.55 "Package Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

36. Plaintiff Duskey did not know the charge existed or that it could have been removed prior to her purchase.

37. Plaintiff Duskey would not have purchased "Package Protection" if she knew it was optional.

## VII. Plaintiff Kuhlman's Experience

38. Plaintiff Kuhlman purchased items from TobbacoGeneral.com on August 12, 2024.

39. Plaintiff Kuhlman's purchase included a $3.75 "Shipping Protection" fee that was automatically and surreptitiously added to his cart, that—for the reasons described above—in fact represented an additional shipping charge.

40. Plaintiff did not know the charge existed or could be removed prior to his purchase.

41. Plaintiff would not have purchased "Shipping Protection" if he knew it was optional.

## CLASS ALLEGATIONS

42. Plaintiffs bring this action on behalf of themselves and a nationwide Class of all other similarly situated persons. The proposed Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a "package protection," "shipping protection," or other similar fee for a service provided by Navidium.

43. Plaintiff Duskey also brings this action on behalf of an Illinois Sub-Class.

44. Plaintiff Kuhlman also brings this action on behalf of a Michigan Sub-Class.

45. Excluded from the Classes are Navidium, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

46. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

47. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Navidium has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a. Whether Navidium engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Classes;

b. Whether Navidium's alleged misconduct misled or had the tendency to mislead consumers;

c. Whether Navidium engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether Navidium's alleged conduct constitutes violations of the laws asserted;

e. Whether Plaintiffs and members of the Classes were harmed by Navidium's misrepresentations;

f. Whether Navidium was unjustly enriched;

g. Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent Navidium from continuing to engage in the wrongful conduct described herein.

48. The parties are so numerous that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of Navidium and can be ascertained only by resort to Navidium's business records. Navidium has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs.

49. It is impracticable to bring the individual claims of members of the Classes before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense, or the possibility of inconsistent or

contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

50. Plaintiffs' claims are typical of the claims of other Class members in that they arise out of the same wrongful business practices by Navidium, as described herein.

51. Plaintiffs are more than adequate representatives of the Classes in that Plaintiffs are Navidium's customers and they have suffered damages because of Navidium's misrepresentations. In addition:

a) Plaintiffs are committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiffs and the unnamed Class members; and

c) Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

52. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

53. Navidium has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

54. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CLAIM FOR RELIEF
**Tortious Interference With Contract**
**(On Behalf of Plaintiffs and the Nationwide Class)**

55. Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

56. Plaintiffs and the Class have contracted with e-commerce retailers for the purchase of merchandise.

57. Navidium had knowledge of the contractual relationship or prospective contractual relationship between e-commerce retailers and Class members like Plaintiffs.

58. Navidium engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Class by (a) deceptively adding fees into consumers' carts; (b) deceptively naming and describing its fees; (c) charging Plaintiffs and Class members for shipping above and beyond what was promised to them; and (d) charging fees that provide no added value to consumers when reasonable consumers, like Plaintiffs, would not knowingly choose to pay them, absent Navidium's deception.

59. Navidium intended to prevent or hinder performance of the contract between e-commerce retailers and the Class, including Plaintiffs. As a result, Plaintiffs and the Class were harmed.

60. Navidium's conduct as described herein substantially caused the harm inflicted on Plaintiffs and the Class.

## SECOND CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

61. Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

62. To the detriment of Plaintiffs and the Class, Navidium has been, and continues to be, unjustly enriched because of its wrongful conduct alleged herein.

63. Plaintiffs and the Class conferred a benefit on Navidium.

64. Navidium unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which, under the circumstances, would be unjust to allow Navidium to retain.

65. Navidium's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

66. Damages may not adequately compensate the harms Plaintiffs and the Class sustained because they are not as certain, equally prompt, or otherwise efficient as restitution. Plaintiffs must engage in discovery to determine whether money damages will adequately remedy these harms.

67. Plaintiffs and the Class therefore seek disgorgement of all fees wrongfully retained by Navidium because of its inequitable conduct as more fully stated herein.

**THIRD CLAIM FOR RELIEF**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**
**815 ILCS 501/1, *et seq.***
**(On Behalf of Plaintiff Kuhlman and the Illinois Sub-Class)**

68. Plaintiff Kuhlman hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

69. This Claim is brought on behalf of the Illinois Sub-Class, which is referred to in this section as the "Class."

70. Defendant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*.

71. Section 2 of the ICFA, 815 ILCS 505/2, provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person

> has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

72. Section 10a of the ICFA, provides in relevant part:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . .
>
> . . .
>
> (c) . . . [I]n any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

815 ILCS 505/10A(a).

73. Plaintiff and Class members are "consumers" or "persons" as defined under the ICFA, 815 ILCS 505/1 *et seq*.

74. Defendant's conduct, as described herein, occurred in the course of trade and commerce.

75. Defendant knowingly and intentionally employed an unfair and deceptive policy and practice of making false, deceptive, and/or misleading representations to Plaintiffs and Class regarding its surreptitious inclusion and assessment of "package protection" and/or "shipping protection" fees.

76. Defendant intended for Plaintiff and the Class members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above, and Plaintiff and the Class members reasonably relied on Defendant's misrepresentations and omissions to their detriment.

77. Defendant's misrepresentations and omissions to Plaintiff and the Class members were material and were likely to mislead Plaintiffs and Class members, and, in fact, did mislead Plaintiffs and Class members.

78. Defendant's conduct described herein constitutes unfair and deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

79. Plaintiff and the Sub-Class would not have purchased "Package Protection" if he/they knew it was optional

80. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Illinois Sub-Class have suffered actual damages.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Michigan Consumer Protection Act ("MCPA")**
**Mich. Compl. Laws § 445.903**
**(On Behalf of Plaintiff Duskey and the Michigan Sub-Class)**

81. Plaintiff Duskey hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

82. This Claim is brought on behalf of the Michigan Sub-Class, which is referred to in this section as the "Class."

83. Defendant has violated the Michigan Consumer Protection Act ("MCPA"), Mich. Compl. Laws § 445.903, *et seq*.

84. The MCPA prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . . " Mich. Comp. Laws § 445.903(1).

85. As described in this Complaint, Navidium has engaged in unfair, unconscionable, and deceptive trade practices that are unlawful under the MCPA.

86. Navidium's unfair, deceptive, and unconscionable acts and practices include making false, deceptive, and/or misleading representations to Plaintiffs and Class regarding its surreptitious inclusion and assessment of "package protection" and/or "shipping protection" fees.

87. Defendant intended for Plaintiff and the Class members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and

omissions alleged above, and Plaintiff and the Class members reasonably relied on Defendant's misrepresentations and omissions to their detriment.

88. Defendant's misrepresentations and omissions to Plaintiff and the Class members were material and were likely to mislead Plaintiffs and Class members, and, in fact, did mislead Plaintiffs and Class members.

89. Defendant's conduct described herein constitutes unfair and deceptive acts or practices in violation of the MCPA.

90. Due to the misrepresentations and unlawful trade practices, Nvidium violated the following provisions of the MCPA § 445.903:

> (c) "Representing that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have . . .";
>
> (e) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another.";
>
> (s) "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."; and
>
> (cc) "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."

91. Plaintiff and the Sub-Class would not have purchased "Package Protection" if he/they knew it was optional.

92. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Michigan Sub-Class have suffered actual damages.

93. Plaintiff and members of the Michigan subclass are entitled to the injunctive relief requested herein to address Navidium's past and future acts of deceptive and unfair trade practices.

94. Plaintiff and members of the Michigan subclass are entitled to restitution of money and property that was acquired by Navidium by means of its unfair competition and restitutionary disgorgement of all profits accruing to Navidium as a result of its unfair business practices.

95. Plaintiff and subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, demand a jury trial on all claims so triable and judgment as follows:

(a) Certification of this matter to proceed as a class action on behalf of the Classes;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Navidium to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For reasonable attorneys' fees and costs of suit;

(f) For pre-judgment interest; and

(g) Awarding such other relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: March 9, 2026 **REESE LLP**

By: ______________
Carlos F. Ramirez
*cramirez@reesellp.com*
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**KALIELGOLD PLLC**
Jeffrey D. Kaliel*
*jkaliel@kalielpllc.com*
Amanda J. Rosenberg*
*arosenberg@kalielgold.com*
1100 15th Street, NW
Washington, DC 20005
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold*
*sgold@kalielgold.com*
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
*chris@jefirm.com*
Tyler B. Ewigleben*
*tyler@jefirm.com*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (501-255-8569)

**pro hac vice to be submitted*

*Attorneys for Plaintiffs and the Classes*